TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

---

|  | : |  |
| OPINION | : | No. 98-1106 |
|  | : |  |
| of | : | March 10, 1999 |
|  | : |  |
| BILL LOCKYER | : |  |
| Attorney General | : |  |
|  | : |  |
| GREGORY L. GONOT | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

---

THE HONORABLE MICHAEL H. KRAUSNICK, COUNTY COUNSEL, COUNTY OF STANISLAUS, has requested an opinion on the following question:

Is Revenue and Taxation Code section 423.4 constitutional in authorizing property to be assessed at 65 percent of a specified value under the circumstances described therein?

CONCLUSION

Revenue and Taxation Code section 423.4 is constitutional in authorizing property to be assessed at 65 percent of a specified value under the circumstances described therein.

ANALYSIS

The question presented for resolution concerns the constitutionality of Revenue and Taxation Code section 423.4,[1] which permits certain enforceably restricted farmland to be assessed for property tax purposes at 65 percent of a specified restricted-use value. Section 423.4 provides:

"Land subject to a farmland security zone contract specified in Section 51296 of the Government Code shall be valued for assessment purposes at 65 percent of the value under Section 423 or 65 percent of the value under Section 110.1, whichever is lower."[2]

Is section 423.4 constitutional in light of the requirements of sections 1 and 8 of article XIII of the Constitution? The former constitutional provision provides in part:

"Unless otherwise provided by this Constitution or the laws of the United States:

"(a) All property is taxable and shall be assessed at the same percentage of fair market value. When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value."

The latter constitutional provision states in part:

"To promote the conservation, preservation and continued existence of open space lands, the Legislature may define open space land and shall provide that when this land is enforceably restricted, in a manner specified by the Legislature, to recreation, enjoyment of scenic beauty, use or conservation of natural resources, or production of food or fiber, it shall be valued for property tax purposes only on a basis that is consistent with its restrictions and

---

[1]  All undesignated section references are to the Revenue and Taxation Code.

[2] A contract specified in Government Code section 51296 must contain numerous restricted use provisions including that it "be for an initial term of no less than 20 years," with a yearly roll-over provision. (Gov. Code., § 51296, subd. (a)(4).) Section 423 describes what factors may be considered when valuing enforceably restricted open-space land. Section 110.1 specifies the factors to be considered when valuing real property in California generally.

uses."

We conclude that section 423.4 is constitutional.

Section 423.4 is part of recent legislation (Stats. 1998, ch. 353) designed to strengthen the Williamson Act (Gov. Code, §§ 51200-51295). Enacted originally as the California Land Conservation Act of 1965, the Williamson Act's primary goal is to preserve farmland and open space. (See *Shellenberger* v. *Bd. of Equalization* (1983) 147 Cal.App.3d 510, 513.) A landowner may contract with a city or county to restrict the use of agricultural land in exchange for a reduction in property taxes. (See 75 Ops.Cal.Atty.Gen. 278, 280 (1992).) Williamson Act contracts have an initial term of 10 years and are renewed annually to create a 10-year rolling term. (Gov. Code, § 51244.)

Finding that greater incentives were needed to keep prime agricultural land in production,[3] the Legislature enacted urgency legislation in 1998, authorizing farmland security zone contracts containing additional restrictions and covering a 20-year term to be used as an alternative to Williamson Act contracts. (Gov. Code, § 51296, subd. (b).) The landowner receives reduced property taxes pursuant to section 423.4 (Gov. Code, § 51296, subd. (c)) and other specified benefits (Gov. Code, § 51296, subds. (d)-(g)).

Generally, the power of the Legislature is supreme in the field of taxation, and provisions in the Constitution constitute a limitation on legislative authority rather than a grant of power. (*Delaney* v. *Lowery* (1945) 25 Cal.2d 561, 568; *Hoyt* v. *Woody* (1945) 25 Cal.2d 947.) Unless there is some constitutional provision that prohibits a legislative enactment, the Legislature is free to exercise its authority. (*People* v. *Keith Railway Equipment Co.* (1945) 70 Cal.App.2d 339, 350.) The Constitution "does not require complete uniformity of taxation." (*Ibid.*) " '[T]axpayers may be treated differently if they are of different classes and a law sufficiently meets the constitutional requirement if it acts uniformly upon the whole of any single class of individuals or objects, and the classification is founded upon some natural, intrinsic or constitutional distinction.' "(*Ibid.*) The principle that different tax rates may apply to property in different classifications was expressed by the court in *Hewlett-Packard Co.* v. *County of Santa Clara* (1975) 50 Cal.App.3d 74, 79: "The constitutional mandate for uniform taxation . . . applies only to property which has not been classified in a manner different from other property or has not been exempted from taxation in whole or in part." In *Mission Housing Development Co.* v. *City and County of*

---

[3] "The Legislature finds and declares that it is desirable to expand options available to landowners for the preservation of agricultural land. It is therefore the intent of the Legislature in enacting this article to encourage the creation of longer term voluntary enforceable restrictions within agricultural preserves." (Gov. Code, § 51296, subd. (a).)

*San Francisco* (1997) 59 Cal.App.4th 55, 81-82, the court recently observed with respect to subdivision (a) of section 1 of article XIII:

> "In *McClelland* v. *Board of Supervisors* (1947) 30 Cal.2d 124, the California Supreme Court stated with respect to former section 1 of article XIII of the California Constitution that ' "the taxpayer is entitled to . . . the exercise of good faith and fair consideration on the part of the taxing power in assessing his property, at the same rate and on the same basis of valuation as that applied to other property of like character and similarly situated. Inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax." . . .' (*Id.*, at pp. 128-129, citations omitted.)
>
> ". . . [A]rticle XIII, section 1 itself contemplates that different value standards may be set by statute. (Cal. Const., art. XIII, § 1, subd. (a); *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813, 822-823.)"

Here, the Legislature has enacted section 423.4 pursuant to the mandate of section 8 of article XIII of the Constitution. The Legislature is directed to "provide that when . . . land is enforceably restricted, . . it shall be valued for property tax purposes only on a basis that is consistent with its restrictions and uses." Since land subject to a farmland security zone contract is under more use restrictions than land subject to a Williamson Act contract, the former *must* be valued less for property tax purposes than the latter. Accordingly, section 423.4 sets the value at 65 percent of the value of Williamson Act land under section 423. Because the Constitution prohibits the same valuation for lands subject to different restrictions, sections 423 and 423.4 carry out this constitutional mandate.

The 65 percent figure of section 423.4 creates the "value standard" that is "other than fair market value" (Cal. Const., art. XIII, § 1, subd. (a)) prescribed by the Constitution (Cal. Const., art. XIII, § 8). As a means for valuing different types of property with different restrictions and uses, the percentage figure of section 423.4 is the "same percentage" as applied to all farmland security zone contract property. Williamson Act contract property, of a different character and differently situated, receives a different valuation without violating section 1 of article XIII of the Constitution. (See *McClelland* v. *Board of Supervisors* (1947) 20 Cal.2d 124, 129.)

Finally, we note the following principles of statutory construction set forth in *People* v. *Keith Railway Equipment Co., supra,* 70 Cal.App.2d at 358:

> ". . . [I]t is a well-established and universally recognized principal of

law that all presumptions and intendments are in favor of the constitutionality of a statute enacted by a Legislature; that all doubts are to be resolved in favor of and not against the validity of a statute; and that before an act may be declared invalid by the judiciary for the reason that it is in conflict with the Constitution, such conflict must be clear, positive and unquestionable. [Citations.] "

We find no such conflict between section 423.4 and article XIII of the Constitution. We conclude that section 423.4 is constitutional in authorizing property to be assessed at 65 percent of a specified value under the circumstances described therein.

* * * * *